UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| OSCAR MOORE III, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:06-cv-160 |
| | ) |
| v. | ) Honorable Robert Holmes Bell |
| | ) |
| CARMEN PALMER et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.  Factual allegations

Plaintiff is incarcerated in the Riverside Correctional Facility (RCF). Plaintiff's action concerns his termination from a prison job at RCF. In his *pro se* complaint, he sues the following RCF employees: Warden Carmen Palmer, Assistant Warden of Programs Gary Ball, Assistant Warden of Housing Matt Macauley, Classification Director Tanisha Black and Quartermaster Supervisor Steve Thelene. Plaintiff also sues Patricia Caruso, Director of the Michigan Department of Corrections (MDOC), and James Armstrong, Manager of Prisoner Affairs.

Plaintiff claims that he has three "vernicular fussion" [sic] in his spine. As a result, Plaintiff has been classified to light duty since 1987. Plaintiff cannot perform jobs that require standing for long periods of time or heavy lifting. During his incarceration, Plaintiff has performed a variety of jobs, including clerk typist, sewing machine operator, garment pattern maker and garment inspector. After his arrival at RCF, Plaintiff was classified to the clerks job pool and the quartermaster job pool. He was not immediately placed in a job because there were no available positions. Plaintiff filed a grievance on August 17, 2005, complaining that job assignments at RCF were made based upon a prisoner's "time and crime," rather than a prisoner's history of good institutional behavior. *See* Grievance No. RCF 05-08-01076-006Z. On November 1, 2005, Plaintiff was assigned to a quartermaster position. However, Defendant Thelene terminated Plaintiff on November 14, 2005, because Plaintiff was medically unable to fulfill his duties. On November 22, 2005, Plaintiff filed a grievance claiming that he was fired from his quartermaster position as a result of his physical disability. For relief, Plaintiff seeks damages of one million dollars.

II.     Exhaustion of administrative remedies

Plaintiff has failed sufficiently to allege and show exhaustion of available administrative remedies.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  A district court must enforce the exhaustion requirement *sua sponte.  Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.[1]  *Brown*, 139 F.3d at 1104.  In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted.  *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000).  In addition, a prisoner must specifically mention the involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the

---

[1] To assist prisoners in meeting this requirement, this Court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint.  The form complaint, which is required by local rule, is disseminated to all the prisons.  *See* W.D. MICH. LCIVR 5.6(a).  Plaintiff used a form complaint to file his action, although it is not the form provided by this Court.

- 3 -

defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

The MDOC provides a three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy or procedure or unsatisfactory conditions of confinement") (effective 12/19/03). As set forth above, Plaintiff filed two grievances concerning his job assignment at RCF. Plaintiff pursued both grievances to Step III. In his Step I grievances, Plaintiff names only Defendants Thelene, Black and Macauley. In order to properly exhaust MDOC grievance procedures, a prisoner must raise each of his claims for the first time at Step I. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). Consequently, while Plaintiff exhausted his claims against Defendants Thelene, Black and Macauley, he failed to exhaust his administrative remedies with regard to Defendants Palmer, Caruso, Ball and Armstrong.

A civil rights action containing both exhausted and unexhausted claims is subject to dismissal under the "total exhaustion" rule. *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005). However, the Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown*, 139 F.3d at 1103. Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the Court will dismiss his action without first requiring Plaintiff to exhaust any available administrative remedies.

III.    Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that he was terminated from his prison employment as the result of his disability. Plaintiff does not assert a violation of a specific federal right, but his claim implicates the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132. The ADA prohibits an employer from discriminating against an otherwise qualified individual on the basis of a disability in regards to employment terms, conditions, and privileges. 42 U.S.C. § 12112(a). The ADA applies to state prisoners. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998). In order to establish a *prima facie* case of disability discrimination, the employee must prove that he: (1) is a disabled person within the meaning of the ADA; (2) is otherwise qualified for the position despite the disability; and (3) was subjected to an adverse employment decision because of the disability. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir. 1996). Under the ADA, "disability" means a physical or mental impairment that substantially limits one or more major life activities. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997). An impairment that disqualifies a person from only a narrow range of jobs is not considered substantially limiting. *Id.* at 373. Further, an individual is not substantially limited merely because he cannot work the job of his choice. *Id.* at 373-74.

Plaintiff does not allege that he is substantially limited in one or more major life activities. As Plaintiff indicates in his grievances, he has performed a variety of other prison jobs, including clerk typist, sewing machine operator, garment pattern maker and garment inspector. Plaintiff remains in the clerk pool at RCF. The fact that Plaintiff cannot work in a quartermaster position is not sufficient to establish that he is substantially limited. *See McKinley v. Bowlen*, No. 00-6344, 8 F. App'x 488, 491 (6th Cir. 2001) (prison officials did not discriminate against inmate who sought prison job, in violation of the ADA, where inmate was not substantially limited in one or more major life activities); *compare Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004) (paraplegic state prisoner was "disabled" within meaning of ADA because prisoner was substantially limited in the major life activity of walking). Moreover, the Sixth Circuit has repeatedly held that a lifting restriction alone is not considered a disability under the ADA. *See, e.g.*, *McKay,* 110 F.3d at 373; *Olds v. United Parcel Serv., Inc.*, No. 03-1920, 127 F. App'x 779, 782 (6th Cir. 2005); *Gayer v. Cont'l Airlines, Inc.*, 21 F. App'x 347, 350 (6th Cir. 2001). Plaintiff, therefore, fails to state a claim under the ADA.

Furthermore, Plaintiff cannot state a claim under the Due Process Clause because prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). In addition, "as the Constitution and federal law do not create a

property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).  Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Date:     March 14, 2006              /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT  JUDGE